*Prison Legal News v. Corrections Corporation of America*, No. 332-5-13 Wncv (Teachout, J., January 21, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 332-5-13 Wncv** |

**Prison Legal News**
    **Plaintiff**

    **v.**

**Corrections Corporation of America**
    **Defendant**

## DECISION
### Cross-Motions for Summary Judgment

This is a public records case in which Plaintiff Prison Legal News (PLN) has sought records from a private entity, Defendant Corrections Corporation of America (CCA), which houses Vermont prisoners in out-of-state facilities under contract with the Vermont Department of Corrections (DOC). The court (Judge Bent) earlier ruled that CCA is the *functional equivalent* of a public agency for purposes of Vermont's Access to Public Records Act, 1 V.S.A. §§ 315–320, which thus applies to PLN's request.[1]

PLN had sought all documents related to the payment of judgments or settlements to claimants by CCA arising out of the prison services that CCA provides under contract with the DOC. Following Judge Bent's ruling, the parties narrowed PLN's request by agreement and CCA produced all responsive documents but two, which are the subject of the current round of motions. The disputed documents are settlement agreements that resolved claims brought by two inmates alleging that they had been sexually assaulted by a corrections officer. Each contains a provision making the settlement amount confidential. CCA represents that it sought a waiver from the claimants, though their counsel, to enable it to produce the agreements, but no waiver was forthcoming. PLN asserts that it is not interested in the identities or intimate details of the inmate-claimants, but wants the agreements produced with the amounts unredacted.

CCA does not argue that the agreements are not public records within the meaning of the Act and, generally, there is no exemption applicable to settlements entered into by public agencies. 1 V.S.A. § 317(c)(1)–(42). Records related to litigation to which a public agency is a party are subject to the Act's disclosure requirement when a court rules that they are discoverable and "in any event upon final termination of the litigation." *Id*. § 317(c)(14). CCA argues that the agreements in this case nevertheless are exempt because: disclosure would cause the custodian to violate a "duly adopted standard of ethics," 1 V.S.A. § 317(c)(3); disclosure

---

[1] The court understands footnote 1 of Judge Bent's decision to mean that the court, in that decision, was ruling on the substantive question of whether CCA is subject to the Act as a matter of law and not the procedural question of whether the complaint stated a claim. See Decision re: CCA's Motion to Dismiss 1 n.1 (filed Jan. 10, 2014). Based on the current filings, that appears to be CCA's understanding as well. PLN nevertheless now seeks summary judgment on that issue. The court considers that question resolved by Judge Bent's ruling and declines to revisit it.

would cause the custodian to violate a "statutory or common law privilege," *id.* § 317(c)(4); and due to the personal nature of the information contained in the documents, *id.* § 317(c)(7).

CCA argues that the two settlement agreements were located in the office of its counsel and that requiring production would cause its counsel to violate the ethical obligation to keep client communications confidential. The exemption at § 317(c)(3), however, speaks to the ethical obligations of the *custodian* of the records. The mere physical location of these records in CCA's counsel's office does not convert CCA's counsel into the operative custodian for purposes of the exemption. There is no genuine dispute that the records are subject to CCA's control and CCA can choose to release them. CCA thus is the custodian. See *Pease v. Windsor Development Review Bd.*, 2011 VT 103, ¶ 19, 190 Vt. 639 ("custodian [is] one 'who ha[s] it within their power to release or communicate public records.'" (citation omitted)). There is no allegation that disclosure would cause CCA to violate any ethical standard.

There also can be no genuine dispute about whether these documents are subject to attorney–client privilege. The executed settlement agreements evidently were destroyed at some point pursuant to CCA's records retention policy. The available agreements are unsigned copies of the actual settlement agreements. There is no allegation that, but for the missing signatures, they are the final drafts of the agreements. Thus, they are not documents that were kept confidential between attorney and client; at a minimum, they were shared with the third-party claimants. The privilege applies to confidential communications. V.R.E. 502(b). Confidential communications between an attorney and client are those that are "not intended to be disclosed to third persons." V.R.E. 502(a)(5). "[S]ettlement terms are specifically designed to be communicated to other parties [third parties] in a litigation." *Steinfeld v. Dworkin*, 147 Vt. 341, 343 (1986). There is no legitimate claim of privilege with regard to a settlement agreement actually communicated to a third-party claimant.

CCA also argues that the settlement agreements contain intimate personal details that should be exempt from disclosure under the personal documents exemption. 1 V.S.A. § 317(c)(7). This exemption requires the court to not order the production of those portions of requested documents that reveal intimate personal details unless the interest in public disclosure outweighs the interest in privacy. *Trombley v. Bellows Falls Union High School*, 160 Vt. 101, 110 (1993). Though the disputed agreements evidently do not reveal the identities of the inmate-claimants and CCA has not made a factual showing that they otherwise include intimate personal information, the claimants are not parties in this case, the subject matter is such that intimate information might reasonably be expected to appear in the agreements, and the volume of documents at issue is quite limited. The court will review the withheld settlement agreements to determine whether any portions of them should be redacted prior to release.

2

**ORDER**

For the foregoing reasons, CCA's and PLN's motions for summary judgment are *granted in part* and *denied in part*. CCA shall file under seal both of the withheld settlement agreements for the court's *in camera* review.

Dated at Montpelier, Vermont this 21st day of January 2015.

_____
Mary Miles Teachout,
Superior Judge